**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MSTG, INC.**, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 08 C 7411 |
| | ) | |
| v. | ) | Judge Edmond E. Chang |
| | ) | |
| **AT&T MOBILITY LLC**, | ) | Magistrate Judge |
| | ) | Martin C. Ashman |
| Defendant. | ) | |

### MEMORANDUM ORDER

Before the Court is Defendant AT&T Mobility LLC's ("AT&T") Motion for Reconsideration of this Court's January 20, 2011 order. *See MSTG, Inc. v. AT&T Mobility LLC*, No. 08 C 7411, 2011 WL 221771 (N.D. Ill. Jan. 20, 2011). AT&T asks the Court to reconsider that portion of its order denying AT&T's motion to compel Plaintiff MSTG, Inc. ("MSTG") to produce documents reflecting communications, including settlement negotiations, it had with third-party licensees with whom it entered license agreements concerning the patents at issue in this case.[1] Based on a careful review of the parties' briefs, the Court finds that AT&T's motion should be granted.

A motion for reconsideration is narrowly designed "to correct manifest errors of law or fact or to present newly discovered evidence." *Publishers Resource, Inc. v. Walker-Davis Publications, Inc*., 762 F.2d 557, 561 (7th Cir. 1985). AT&T contends that is the case here

---

[1] Currently, only patent Nos. 5,920,552 ("the '551 patent") and 6,438,113 ("the '113 patent") remain at issue in this case.

because a report by MSTG's damages expert, Frank Bernatowicz, became available after the parties submitted their original briefs. MSTG claims that AT&T received the report on January 10, 2011, ten days before the Court's order was issued, and that it should have filed a supplemental brief based on the expert report instead of waiting to file the instant motion. Although supplemental briefing would have been more economical for the parties and the Court, the time period between AT&T's receipt of the report and the Court's order was not unduly lengthy. In light of the importance of the expert report, the Court accepts it as new evidence that warrants the filing of a motion for reconsideration.

The parties once again address the issue of whether settlement negotiations should be produced pursuant to the Federal Circuit's decision in *ResQNet.com, Inc. v. Lansa, Inc*., 594 F.3d 860 (Fed. Cir. 2010). The Court's prior order noted the split in judicial opinions applying *ResQNet* to such negotiations and held that the case "does not require the discovery of settlement negotiations, although its exceptionally broad language may permit it under some circumstances." *MSTG*, 2011 WL 221771, at *13. The Court did not order MSTG to do so, however, because AT&T did not identify the negotiations it sought to produce and failed to show why settlement negotiations related to the licenses were relevant to a reasonable royalty calculation.[2]

---

[2] As the Court stated earlier, a patentee who shows infringement is entitled to a reasonable royalty, which is calculated as a hypothetical negotiation between the patentee and the infringer based on the factors of *Georgia-Pacific Corp. v. United States Plywood Corp*., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). *See MSTG*, 2011 WL 221771, at *11. A patentee who relies on a prior license agreement to make such a showing must demonstrate that the agreement is "sufficiently comparable to the hypothetical license at issue in suit." *Lucent Techs., Inc. v. Gateway, Inc*., 580 F.3d 1301, 1325 (Fed. Cir. 2009).

AT&T does not dispute the Court's interpretation of *ResQNet*, arguing instead that Bernatowicz's report provides a new ground for producing documents related to the settlement negotiations. AT&T notes that Bernatowicz considered six license agreements that involve the '551 and '113 patents as part his reasonable royalty analysis and argues that this fact makes both the agreements and the negotiations related to those licenses relevant to a hypothetical negotiation.[3] MSTG counters this argument by first claiming that Bernatowicz did not rely on the license agreements in his analysis. The report, however, suggests otherwise. Bernatowicz states that the license agreements are not comparable to negotiations between AT&T and MSTG on the '551 and '113 patents, but he reached that conclusion only by carefully analyzing the licences and stating, "I have reviewed these six agreements and taken them into consideration in my reasonable royalty analysis[.]" (Def's. Mot., Ex. A at 16.) In this sense, at least, Bernatowicz "relied" on the licenses to find that they cannot be used as the basis for a hypothetical negotiation analysis.

MSTG also argues that, because Bernatowicz reached his conclusions based on the four corners of the licenses themselves and did not review any settlement negotiations, those negotiations are not discoverable. In support, the company claims that the Court's prior order acknowledged that it was possible to determine whether the licenses are the most reliable agreements on which to base a reasonable royalty without considering the underlying settlement negotiations. *See ResQNet*, 594 F.3d at 872-73 (discussing the reliability of licenses to

---

[3] These include: (1) an April 30, 2009 agreement with Nokia Corp.; (2) an April 23, 2010 agreement with Motorola, Inc.; (3) a January 26, 2010 agreement with Sanyo Electric Co.; (4) a July 9, 2010 agreement with RPX Corp.; (5) an August 30, 2010 agreement with U.S. Cellular Corp; and, (6) a November 10, 2009 agreement with Apple, Inc. AT&T does not dispute MSTG's claim that it already has copies of the six agreements.

demonstrate a reasonable royalty). The Court, however, did not reach such a conclusion, nor did it discuss the sufficiency or insufficiency of the license agreements, standing alone, to show a reasonable royalty. Instead, the Court addressed the narrower issue of whether AT&T had carried its burden to compel discovery and noted that AT&T had not argued that the settlement negotiations would add to the information it already had in light of the licenses themselves.

Based on the new evidence before the Court, AT&T now claims that the negotiation documents could do so because they might contain information showing that the grounds Bernatowicz relied on to reach his conclusion are erroneous. Bernatowicz, for example, found that the royalty rates in the prior licenses should be discounted by 75 percent compared to the rates applicable to AT&T and that MSTG is entitled to royalties ranging from $26.4 million to $35.3 million. By contrast, Bernatowicz concluded, the combined royalties under all the prior licenses amounted to $24.4 million, even though they involve more patents than those at issue here. (Def's. Mot., Ex. A at 16, 45.) AT&T argues that the settlement negotiations could show whether this steep discount is warranted or what reasons might have led the parties to reach the terms evidenced in the third-party licenses. Moreover, such information could also shed light on the alleged "absurdity" of Bernatowicz's conclusion on the appropriate royalty figure in this case. (*Id*. at 5.)

The Court agrees with this analysis. Presumably, MSTG will argue at trial that Bernatowicz's report precludes any reliance on its third-party agreements involving the patents-in-suit to calculate a reasonable royalty, and AT&T will want to proffer its own expert testimony showing why that argument is incorrect. "To be admissible, expert testimony opining on a reasonable royalty rate must 'carefully tie proof of damages to the claimed invention's

footprint in the market place.'" *Uniloc USA, Inc. v. Microsoft, Corp.*, Nos. 2010-1035, 2010-1055, — F.3d — , 2011 WL 9738, at *21 (Fed. Cir. Jan. 4, 2011) (citing *ResQNet*, 594 F.3d at 869)). The evidence AT&T seeks to discover may distinguish the '551 and '113 patents from the other patents in the third-party licenses and may allow AT&T to show that some or all of Bernatowicz's conclusions about the six license agreements are incorrect. As such, the information could be relevant to disputing Bernatowicz's report or to forming a basis for AT&T's expert to conclude that the third-party agreements *do* show the market footprints of the patents-in-suit. *See* Fed. R. Evid. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").

Bernatowicz, for example, based the 75 percent discount noted above on independent studies that analyze the success rates of patent litigation, not on evidence concerning what actually occurred between MSTG and the third-party licensees. (Def's. Mot., Ex. A at 17.) Documents related to negotiations could shed light on why the parties reached their royalty agreements and could provide guidance on whether some or all of the licenses could be considered a basis for calculating a reasonable royalty between AT&T and MSTG. As *ResQNet* itself noted, the most reliable agreements for such a calculation can, in some cases, arise out of litigation. *ResQNet*, 594 F.3d at 872 ("This court observes as well that the most reliable license in this record arose out of litigation.").

Federal Rule of Civil Procedure 26(b)(1) permits discovery "of any matter that is relevant to the claim or defense of any party . . . and is not privileged." Fed. R. Civ. P. 26(b)(1). As this Court has explained, the question of whether settlement negotiations are privileged is not always

easily answered. *Pfizer, Inc. v. Apotex, Inc.*, 731 F. Supp.2d 754, 763-64 (N.D. Ill. 2010); *see also In re General Motors Corp.*, 594 F.2d 1106, 1124 n.20 (7th Cir. 1979) (stating that "the existence of such privileges is best determined in the context of particular demands for discovery" and permitting discovery of negotiations to show the fairness of a settlement). Here, however, MSTG has not argued in its response to the instant motion that any privilege applies to its settlement negotiations.[4] Discovery requests are relevant "if there is any possibility that the information sought may be relevant to the subject matter of the action." *Rubin v. Islamic Republic of Iran*, 349 F. Supp.2d 1108, 1111 (N.D. Ill. 2004). Under this standard, the Court finds that the information AT&T seeks is discoverable because it could provide grounds for deciding if MSTG's prior licenses are – or are not – sufficiently comparable to the patents-in-suit to be used in calculating a reasonable royalty.

The Federal Circuit has characterized hypothetical negotiations as involving both "fantasy and flexibility." *Fromson v. Western Litho Plate and Supply Co.*, 853 F.2d 1568, 1575 (Fed. Cir. 1988). Based on the lack of rigidity implied by this standard, as well as the facts presented, the Court joins those courts that have relied on *ResQNet* to allow the discovery of

---

[4] In its prior response, MSTG briefly noted the Court's decision in *Pfizer* and urged the Court to deny discovery "for the same public policy reasons" relied on in that case. (Plt's. Resp. at 14.) Such an argument does not clearly assert a claim of privilege, and MSTG does not raise the issue in response to the instant motion. In *Pfizer*, the Court noted that some courts in this district have adopted a privilege regarding settlement negotiations. *Pfizer*, 731 F. Supp.2d at 762-64. However, the parties in *Pfizer* relied on Seventh Circuit and Sixth Circuit precedents and did not cite the Federal Circuit's guidance in *ResQNet*. In part, this was because *Pfizer* involved issues such as patent misuse and secondary considerations of nonobviousness, not the hypothetical negotiation concerns at stake here. The Court found against the discovery of settlement negotiations, in part, because the request at issue (1) was overbroad and (2) was not designed to challenge the settlements whose negotiation documents were sought. *Id.* at 764. By contrast, AT&T's request is not overly broad and is directly aimed at challenging Bernatowicz's conclusions about MSTG's third-party licenses.

settlement negotiations when, as here, they are relevant to demonstrating what such a process would have resulted in.  *See*, *e.g.*, *Tyco Healthcare Group LP v. E-Z-EM, Inc.*, No. 2:08-CV-262, 2010 WL 774878, at *2 (E.D. Tex. March 2, 2010).  The Court notes, however, that its decision is limited to these facts involving hypothetical negotiations.  As such, the Court does not question the traditional reluctance of courts, including this Court's own ruling in *Pfizer*, to order the discovery of settlement negotiations, and its decision does not extend beyond the specific facts at issue between the parties in this case.

For these reasons, AT&T's Motion for Reconsideration (Dckt. # 326) is granted.  Within fourteen days of the entry of this order, MSTG shall produce documents reflecting communications, including settlement negotiations, it had with the six companies referenced in AT&T's motion, including Nokia, Motorola, Sanyo Electric, RPX, and U.S. Cellular, as well as the standstill and option agreement it entered with Apple.

**ENTER ORDER:**

_____
**MARTIN C. ASHMAN**
**Dated:**  March 8, 2011.                                United States Magistrate Judge