IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MSTG, INC., | | |
| | Plaintiff, | Case No. 08 C 7411 |
| v. | | Honorable Edmond E. Chang |
| | | Magistrate Judge Ashman |
| AT&T MOBILITY LLC, | | |
| | Defendant. | |

**MSTG, INC.'S FED. R. CIV.P. 72 MEMORANDUM IN SUPPORT OF ITS MOTION TO
SET ASIDE MAGISTRATE JUDGE MARTIN ASHMAN'S ORDER DATED
MARCH 8, 2011 ON THE PRODUCTION OF SETTLEMENT NEGOTIATIONS**

Raymond P. Niro (rniro@nshn.com)
Christopher J. Lee (clee@nshn.com)
Dina M. Hayes (hayes@nshn.com)
David J. Mahalek (mahalek@nshn.com)
Robert A. Conley (rconley@nshn.com)
Joseph A. Culig (culig@nshn.com)
NIRO, HALLER & NIRO
181 W. Madison, Suite 4600
Chicago, IL 60602
(312) 236-0733
Fax: (312) 236-3137

*Attorneys for MSTG, Inc*.

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ...................................................................................................... 1

II.    STANDARD OF REVIEW UNDER FED. R. CIV. P.  72 ............................................. 4

III.   THE MARCH 8, 2011 RECONSIDERATION ORDER IS CONTRARY TO LAW ....... 4

        A.    There Is No Federal Circuit Case Which Supports The Production Of Underlying
             Settlement Discussion Documents And Correspondence ....................................... 4

        B.    *ResQNet* And Subsequent Federal Circuit Cases Require The Threshold Inquiry
             That The Agreements Be For The Same Patents And Same Technology .............. 5

        C.    *Daubert* And Georgia *Pacific* Require MSTG's Expert To Consider The Past
             Licenses And *ResQNet* Mandated That He Conclude That The Licenses Are
             Inapposite And Unreliable .................................................................................. 7

IV.   JUDGE ASHMAN'S MARCH 8, 2011 ORDER IS CLEARLY ERRONEOUS ........... 10

        A.    If Left To Stand, The Reconsideration Order Would Have A Far-Reaching
             Chilling Effect on Settlement Discussions In Patent Lawsuits ............................ 10

        B.    Not Only Are The Inapposite Agreements Irrelevant To A Reasonable Royalty
             Analysis, But So Too Is The Underlying Information Predating Their Execution
             ................................................................................................................... 13

V.     CONCLUSION........................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Advanced Cardiovascular Systems, Inc. v. Medtronic, Inc.*,
265 F.3d 1294 (Fed. Cir. 2001).................................................................. passim

*Bergstrom, Inc. v. Glacier Bay, Inc.*,
2010 U.S. Dist. LEXIS 5284 (N.D. Ill. Jan. 22, 2010) ...........................................12

*Craig v. FedEx Ground Package Sys., Inc.*,
2008 U.S. Dist. LEXIS 65129 (N. D. Ind. Aug. 22, 2008)......................................4

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)..............................................................................1, 7, 8

*Fast Food Gourmet, Inc. v. Little Lady Foods, Inc.*,
2007 U.S. Dist. LEXIS 77439 (N.D. Ill. Oct. 18, 2007)..........................................4

*Fenner Investments, Ltd. v. Hewlett-Packard Co.*,
2010 U.S. Dist. LEXIS 41514 (E.D. Tex. Apr. 28, 2010)......................................12

*Finjan, Inc. v. Secure Computing Corp.*,
626 F.3d 1197 (Fed. Cir. 2010).......................................................................7, 8, 9

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
318 F. Supp. 1116 (S.D.N.Y. 1970)...............................................................7, 8

*Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*,
332 F.3d 976 (6th Cir. 2003) ..........................................................................11

*Inline Connection Corp. v. AOL Time Warner, Inc.*,
470 F. Supp. 2d 435 (D. Del. 2007).................................................................13

*Lucent Technologies, Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009)....................................................................3, 14

*Netcraft Corp. v. AT&T Mobility LLC*,
C.A. No. 07-651-GMS (D. Del.) ........................................................................3

*Newell Cos. v. Kenney Mfg. Co.*,
864 F.2d 757 (Fed. Cir. 1988).............................................................................6

*PharmaStem Therapeutics, Inc. v. Viacell Inc.*,
2003 U.S. Dist. LEXIS 27869 (D. Del. Oct. 7, 2003) .....................................13, 14

*ResQNet.com, Inc. v. Lansa, Inc.*,
   594 F.3d 860 (Fed. Cir. 2010) ....................................................................................1, 5, 6, 14

*Rubin v. Islamic Republic of Iran*,
   349 F. Supp. 2d 1108 (N.D. Ill. 2004) (Ashman, Mag. J.) .......................................................3

*Software Tree, LLC v. Red Hat, Inc.*,
   2010 U.S. Dist. LEXIS 70542 (E.D. Tex. June 24, 2010) ................................................11, 12

*St. Clair Intellectual Prop. Consultants, Inc. v. Canon, Inc.*,
   2011 U.S. App. LEXIS 515 (Fed. Cir. Jan.10, 2011) ............................................................14

*St. Clair Intellectual Prop. Consultants, Inc. v. Fuji Film Co.*,
   674 F. Supp. 2d 555 (D. Del. 2009) .......................................................................................14

*Uniloc USA, Inc. v. Microsoft Corp.*,
   --- F.3d ----, 2011 U.S. App. LEXIS 11 (Fed. Cir. Jan. 4, 2011) ...................................1, 8, 10

*Wordtech Systems, Inc. v. Integrated Networks Solutions, Inc.*,
   609 F.3d 1308 (Fed. Cir. 2010) ........................................................................................1, 6, 7

## STATUTES

35 U.S.C. § 284 .............................................................................................................................7

## OTHER AUTHORITIES

Fed. R. Civ. P. 72 .........................................................................................................................4

Fed. R. Civ. P. 72(a) ....................................................................................................................4

Fed. R. Evid 408 .............................................................................................................3, 10, 11, 13

Fed. R. Evid 402 and 403 ............................................................................................................13

Chad Albert, Comment, Racing to Settlement:  The Applicability of Federal Rule of
   Evidence 408 to Nonparty Settlement Communications, 158 U. Pa. L. Rev. 1199,
   1204 (2010). ..........................................................................................................................11

## I.    INTRODUCTION

On March 8, 2011, upon AT&T's motion for reconsideration of the prior denial of its motion to compel, Magistrate Judge Martin Ashman issued an Order (the "Reconsideration Order") requiring MSTG to produce underlying correspondence and documents regarding litigation-induced settlement and license agreements:

> The Federal Circuit has characterized hypothetical negotiations as involving both 'fantasy and flexibility." *Fromson v. Western Litho Plate and Supply Co.*, 853 F.2d 1568, 1575 (Fed.Cir. 1988).  Based on the lack of rigidity implied by this standard, as well as the facts presented, the Court joins those courts that have relied on *ResQNet* to allow the discovery of settlement negotiations when, as here, they are relevant to demonstrating what such a process would have resulted in.

(Docket No. 351, pp. 6-7).

MSTG respectfully objects to the Reconsideration Order on the basis that *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010) requires no such measure and that the Order is contrary to law, clearly erroneous and must be set aside.  Specifically, the ruling by Magistrate Judge Ashman is at odds with (1) the Federal Circuit precedent protecting settlement negotiations, see *Advanced Cardiovascular Systems, Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1308 (Fed. Cir. 2001); (2) the Federal Circuit precedent governing hypothetical negotiations finding inapposite agreements to the patents in suit irrelevant, see *ResQNet* and *Wordtech Systems, Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308 (Fed. Cir. 2010); and (3) the Supreme Court and Federal Circuit authority requiring that an expert sufficiently tie his testimony to the facts of the case, see, e.g., *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and *Uniloc USA, Inc. v. Microsoft Corp.*, --- F.3d ----, 2011 U.S. App. LEXIS 11 (Fed. Cir. Jan. 4, 2011).

MSTG is mindful of the fact that recent Federal Circuit cases such as *ResQNet* and *Wordtech* found that, in certain circumstances, *settlement and license agreements* themselves

(whether litigation induced, or not) may be relevant to issues in a patent case.  Here, the parties agree that this issue is not before the Court, because MSTG has voluntarily produced all of its settlement agreements with other litigants (Exhibit A.).[1]  Rather, MSTG's present objections center on the March 8, 2011 Reconsideration Order's over-reaching and legally unsupported mandate that all *underlying documents and correspondence* regarding all such settlement and/or license agreements be produced.

Magistrate Judge Ashman's March 8, 2011 Order is clearly erroneous because of the sheer irrelevancy of the pre-settlement negotiation correspondence and related documents between the parties to a settlement agreement and their counsel to any issue in the case.  While Magistrate Judge Ashman has followed AT&T's suggestion that the *ResQNet* decision requires production of such documents and correspondence, that case does not so provide.  More importantly, such a reading of that case would be contrary to the controlling, earlier precedent of the Federal Circuit in *Advanced Cardiovascular*.

Moreover, the Reconsideration Order, if allowed to stand, would have a far-reaching and an unparalleled "chilling effect" on litigants' ability and willingness to discuss and enter into settlements in patent cases.  The likelihood of intrusive discovery on the settlement negotiations and discussions prior to the execution of a settlement agreement by the parties would only discourage such settlement negotiations and result in an increased burden on the courts.

---

[1] Importantly, AT&T's motion to compel was brought in the waning days of discovery and more than a year after MSTG had produced the first of the agreements.  In fact, recognizing the Federal Circuit authority suggesting that such agreements are discoverable (i.e. *ResQNet*), MSTG produced the settlement agreements notwithstanding their little, if any, probative value to any issue in the case, including damages.

The Reconsideration Order is also problematic because it sets no boundaries for the discovery that either party may take regarding the underlying documents and correspondence leading up to the execution of a settlement agreement. If written correspondence and documents of litigation counsel of a party can be discovery on the basis that they relate to a settlement agreement, then should the attorneys of the parties to the settlement be deposed to get an understanding of the statements made in the underlying materials? *See* Fed. R. Evid 408 advisory committee's note to 2006 Amendment ("proof of statements and offers made in settlement would often have to be made through the testimony of attorneys…"). Does that mean a party's litigation counsel, who are effectively material witnesses in the case, face the likelihood of disqualification for representing their clients in settlement discussions? This ruling would present a slippery slope that would only complicate and multiply patent litigation.

For the reasons set forth below, MSTG respectfully submits that the Reconsideration Order is contrary to law and clearly erroneous, and should be set aside. AT&T's motion for reconsideration, just like its earlier motion (which was properly denied by Magistrate Judge Ashman), is nothing more than an "open-ended fishing expedition" that will unnecessarily waste resources and further delay this case. *Rubin v. Islamic Republic of Iran*, 349 F. Supp. 2d 1108, 1111 (N.D. Ill. 2004) (Ashman, Mag. J.).

This is not the first time AT&T has attempted to rely on inapposite patent portfolio licenses so that its expert can offer greatly diminished royalty rates. In the District of Delaware, AT&T sought to rely on the patentee's settlement and portfolio license agreements to justify its expert's unjustifiably low royalty rates. Following *ResQNet* and *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009), the Delaware court rejected AT&T's argument and found the agreements to be unreliable. *Netcraft Corp. v. AT&T Mobility LLC*, C.A. No. 07-651-GMS (D. Del.) (Docket Nos. 337, 353, 378 and 395; Exhibit B). If these fully integrated

settlement agreements themselves are unreliable and unsuitable to be used to determine a reasonable royalty, the *pre-execution negotiation correspondence and related documents*, such as earlier drafts of these settlement agreements, certainly are not reliable or suitable for any purpose in the case.

## II.     STANDARD OF REVIEW UNDER FED. R. CIV. P.  72

A district court's review of a magistrate's non-dispositive order is governed by Rule 72(a) of the Federal Rules of Civil Procedure. *Fast Food Gourmet, Inc. v. Little Lady Foods, Inc.*, 2007 U.S. Dist. LEXIS 77439, at *5 (N.D. Ill. Oct. 18, 2007).  "The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).  A finding is clearly erroneous when, although there may be some evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Fast Food Gourmet*, 2007 U.S. Dist. LEXIS 77439, at *6.  An order is contrary to law "when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Craig v. FedEx Ground Package Sys., Inc. (In re FedEx Ground Package Sys., Inc.)*, 2008 U.S. Dist. LEXIS 65129, at *5 (N. D. Ind. Aug. 22, 2008).

## III.    THE MARCH 8, 2011 RECONSIDERATION ORDER IS CONTRARY TO LAW

### A.     There Is No Federal Circuit Case Which Supports The Production Of Underlying Settlement Discussion Documents And Correspondence

Without clear instruction from the Federal Circuit to compel the production of underlying settlement negotiation documents, this Court should follow the long-standing practice of maintaining the interest in protecting settlement discussions. *Advanced Cardiovascular*, 265 F.3d at 1308 ("[W]e are mindful, as was the district court, of the policy in favor of protecting settlement negotiations form being admitted as evidence, thus serving to encourage

settlements."). The Reconsideration Order, as it now stands, permits the limitless discovery into the underlying documents, including, but not limited to, statements made by MSTG, its counsel, third parties, third party's counsel and others – without any controlling Federal Circuit authority compelling such wholesale intrusion into a (until recently) recognized "safe harbor" for the exchange of open and frank settlement communications between settling parties.

Ever since the Federal Circuit issued its *ResQNet* opinion in February 2010, a number of accused infringers in patent cases have relied on three words from the entire *ResQNet* decision ("panoply of events") to argue that the Federal Circuit meant to open the flood gates into discovery of underlying settlement negotiations, correspondence, depositions, etc. of parties to a settlement agreement and their counsel. Predictably, *ResQNet* does not address the issue of whether such pre-settlement discussions and negotiations are relevant to any issue in a patent case and certainly does not hold that such documents should be produced in patent litigation. MSTG submits that without a clear mandate from the Federal Circuit as to the propriety of the requested intrusive discovery, this Court should follow the explicit Federal Circuit precedent protecting settlement discussions and related documentation, rather than AT&T's tortured reading of the *ResQNet* decision.

**B.** **_ResQNet_ And Subsequent Federal Circuit Cases Require The Threshold Inquiry That The Agreements Be For The Same Patents And Same Technology**

In *ResQNet*, the Federal Circuit reversed a district court's order on damages where the *plaintiff*, not the accused infringer like AT&T in this case, sought to rely on unrelated licenses to present an artificially inflated royalty rate to the jury. More specifically, the *plaintiff's expert* "used licenses with no relationship to the claimed invention to drive the royalty rate up to unjustified double-digit levels." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010). The Federal Circuit set aside the district court's ruling because the district court had

"made no effort to link certain licenses to the infringed patent." *Id.* at 871. Instead, the Federal Circuit instructed that, on remand, "the trial court should not rely on unrelated licenses to increase the royalty rate above rates more clearly lined to the economic demand for the claimed technology." *Id.* at 872-73. That was the holding of *ResQNet*.

Notably, the Federal Circuit did not hold that settlement discussions are discoverable, and to hold otherwise would be contrary to established law. *See, e.g.*, *Advanced Cardiovascular*, 265 F.3d at 1308 ("[W]e are mindful, as was the district court, of the policy in favor of protecting settlement negotiations from being admitted as evidence, thus serving to encourage settlements."); *Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir. 1988) ("[P]rior decisions of a panel of the court are binding precedent on subsequent panels unless and until overturned *in banc*.").

The correct measure of damages must "carefully tie proof of damages to the claimed invention's footprint in the market place." *ResQNet*, 594 F.3d at 869. The correct analysis must focus on "sound economic proof of the nature of the market and likely outcomes [to the hypothetical negotiation] with infringement factored out of the economic picture." *Id.* at 869 (citing *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999)).

After *ResQNet*, the Federal Circuit was to determine if a jury's damages award was sufficiently supported by the evidence including, but not limited to, prior settlement agreements. *Wordtech Systems, Inc. v. Integrated Networks Solutions, Inc.,* 609 F.3d 1308, 1312 (Fed. Cir. 2010). The discussion of *ResQNet* in *Wordtech* focused on the importance of ensuring that the "comparisons of past patent licenses to the infringement must account for the 'technological and economic differences' between them." *Id.* at 1320. Notably, the Federal Circuit (even after *ResQNet*) reiterated the concern of considering licenses after initiating or threatening litigation stating "litigation itself can skew the results of the hypothetical negotiation." *Id.* at 1320-21.

The Federal Circuit in *Wordtech* did not address the admissibility or probative value of (much less mandate the production of) pre-settlement negotiations and discussions.

The only other Federal Circuit opinion discussing *ResQNet* is *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197 (Fed. Cir. 2010).  In *Finjan*, the Federal Circuit affirmed the denial of Defendant's JMOL on damages where the jury awarded $9.18 million in damages and discounted a lower settlement portfolio license.  626 F.3d at 1212.  In following the true holding of *ResQNet*, the Federal Circuit emphasized the importance of accounting for "the differences in the technologies and economic circumstances of the contracting parties."  *Id.*  Again, nothing in *Finjan* suggests that the discovery of underlying settlement discussions, in addition to the settlement agreements themselves, is appropriate under *ResQNet*.

Accordingly, a true and accurate reading of the Federal Circuit precedent demonstrates an utter lack of authority requiring the "discoverability of underling settlement documents and statements."  Permitting the March 8, 2011 Reconsideration Order to stand would be in contravention of the standing Federal Circuit law protecting such communications and material.

### C.    *Daubert* And Georgia *Pacific* Require MSTG's Expert To Consider The Past Licenses And *ResQNet* Mandated That He Conclude That The Licenses Are Inapposite And Unreliable

As compensation for infringement, a patentee is entitled to damages that are "in no event less than a reasonable royalty."  35 U.S.C. § 284.  The reasonable royalty can be calculated by determining what the patentee and the infringer would have agreed to in a hypothetical negotiation.  *See, e.g.*, *Wordtech*, 609 F.3d at 1319.  In determining the hypothetical negotiation, experts often rely on a set of factors called the *Georgia-Pacific* factors.  *See id.* (citing *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)).  *Georgia Pacific* factor No. 1 requires considering past and present royalties received by the patentee "for the licensing of the patent in suit, proving or tending to prove an established royalty."  *Georgia-*

*Pacific*, 318 F. Supp. at 1120. MSTG's expert (Mr. Frank Bernatowicz) remained faithful to the *Georgia-Pacific* framework and applied each and every *Georgia Pacific* factor to his analysis in his expert report. Addressing *Georgia-Pacific* factor No. 1, Mr. Bernatowicz stated that "I have reviewed these six [prior settlement] agreements and taken them into consideration in my reasonable royalty analysis" to satisfy his obligation under the *Georgia-Pacific* analysis as well as to ensure the admissibility of his expert testimony under *Daubert* and other precedents. *See, e.g.*, *Uniloc USA*, 2011 U.S. App. LEXIS 11, at *56-66 (Fed. Cir. 2011) (discussing Supreme Court and Federal Circuit precedent governing admissibility of expert testimony regarding damages). Ultimately, Mr. Bernatowicz concluded that the prior litigation-induced compromises reflected in the settlement agreements (which included the patents in suit and other unrelated patents) were not reliable and should not be used as a basis for determining a reasonable royalty in this case.

Yet, Magistrate Judge Ashman was persuaded by AT&T's suggestion on its motion for reconsideration that Mr. Bernatowicz's "consideration" in his methodology equated to his "reliance" on these agreements to serve as the basis for its reconsideration motion seeking the production of settlement negotiation documents exchanged prior to the execution of the settlement agreements. But, that argument is contrary to the clear statements made by Mr. Bernatowicz himself – that he reviewed *but ultimately did not consider these settlement agreements to be reliable*. To the extent that AT&T believes these agreements are reliable indicators to be used in the determination of a reasonable royalty, it is free to make such an argument since it already has all of the settlement agreements. A trier of fact can then accept or reject such arguments, subject to cross-examination at trial, by both parties. *Finjan*, 626 F.3d at 1212 (accepting expert's distinctions between licensing scenario and hypothetical negotiation "the jury was entitled to hear the expert testimony and decide for itself what to accept or reject.").

In short, as with *Finjan*, Mr. Bernatowicz's opinions are appropriately poised for presentation to the jury, without the further examination of irrelevant information which "might be" gleaned from the underlying settlement documentation.

Unfortunately, however, Magistrate Judge Ashman erroneously accepted AT&T's over-reaching argument that Mr. Bernatowicz's consideration and ultimate rejection of the settlement agreements warrants the production of the underlying negotiation documents which resulted in such agreements. It makes no sense because Mr. Bernatowicz himself has not seen, considered or relied upon any such pre-settlement negotiations and discussions.

Indeed, any speculation by an expert on what the parties to litigation-induced settlement agreements might have meant or intended, or the relative merit of the settlement parties' posturing or arguments presented during settlement negotiations, would be far less reliable than the settlement agreements, which themselves are often unreliable according to the Federal Circuit. That is especially the case here since each of these six settlements expressly provide that (1) the settlement was being made in compromise without any acknowledgement of liability by either side; and (2) the agreement is fully-integrated and the express terms of each agreement constitutes the entire understanding of the settling parties and replaces or supersedes any and all prior oral or written communications between the settling parties. (Exhibit A).

Magistrate Judge Ashman's original January 20, 2011 Memorandum Opinion and Order correctly recognized several factors that supported his finding that *ResQNet* did not require the discovery of settlement negotiations. (Docket No. 324, pp. 24-25). These included the fact that *ResQNet* did not explicitly deal with discoverability or negotiations and the Federal Circuit's express policy disfavoring the admissibility of settlement negotiations. (*Id.*). Magistrate Judge Ashman also correctly noted that AT&T had utterly failed to show the relevance of any such negotiations. (*Id.*, pp. 25-29). All of these factors remain true and applicable.

Looking for a do-over, however, AT&T manufactured "newly discovered evidence" – Mr. Bernatowicz's alleged "reliance" on six license agreements – as a basis upon for its reconsideration motion. As already discussed, Mr. Bernatowicz did *not* rely on the six license agreements at issue. If AT&T believes that he should have relied on these agreements, AT&T is free to cross examine Mr. Bernatowicz using the actual settlement agreements.

Moreover, this supposed "*newly discovered* evidence" stems from license agreements that MSTG produced to AT&T in January 2010 (Apple and Nokia agreements), February 2010 (Sanyo agreement), May 2010 (Motorola agreement), July 2010 (RPX agreement), and September 2010 (U.S. Cellular agreement). An expert's mere consideration of and ultimate decision not to rely on settlement agreements that had been produced many months before an initial unfavorable ruling is hardly the type of newly discovered evidence for which a motion for reconsideration is intended. Thus, AT&T's reconsideration was not soundly based on new evidence and Judge Ashman's January 20, 2011 Order should stand.

## IV. JUDGE ASHMAN'S MARCH 8, 2011 ORDER IS CLEARLY ERRONEOUS

### A. If Left To Stand, The Reconsideration Order Would Have A Far-Reaching Chilling Effect on Settlement Discussions In Patent Lawsuits

While Federal Rule of Evidence 408 primarily addresses the issue of admissibility, rather than discoverability, MSTG believes that the policy behind Rule 408 is instructive in understanding the far-reaching chilling effect that the Reconsideration Order would have on settlement discussions among litigants. Protecting statements exchanged during settlement discussions guards against the admission of statements with "questionable evidentiary value" as the settlement is often "motivated by a desire for peace rather than from any concession of weakness of position" and when put in another context (as AT&T intends to place such statements) "may be highly misleading." Chad Albert, Comment, *Racing to Settlement: The*

*Applicability of Federal Rule of Evidence 408 to Nonparty Settlement Communications*, 158 U. Pa. L. Rev. 1199, 1204 (2010). Moreover, protecting such communications frees individuals from worrying that their statements may expose them to future liability and encourages the settlements of lawsuit which are "vital to ensuring that the federal courts remain productive and efficient." *Id.*

Courts, both before and after *ResQNet*, have shielded settlement negotiations from discovery. In *Software Tree, LLC v. Red Hat, Inc.*, 2010 U.S. Dist. LEXIS 70542 (E.D. Tex. June 24, 2010), the court came to the same conclusion as Magistrate Judge Ashman's initial Order, explicitly rejecting the argument that *ResQNet* required the production of settlement negotiations. The *Software Tree* court closely followed the reasoning of the Sixth Circuit in *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003):

> The ability to negotiate and settle a case without trial fosters a more efficient, more cost-effective, and significantly less burdened judicial system. In order for settlement talks to be effective, parties must feel uninhibited in their communications. Parties are unlikely to propose the types of compromises that most effectively lead to settlement unless they are confident that their proposed solutions cannot be used on cross examination, under the ruse of "impeachment evidence," by some future third party. Parties must be able to abandon their adversarial tendencies to some degree. They must be able to make hypothetical concessions, offer creative quid pro quos, and generally make statements that would otherwise belie their litigation efforts. Without a privilege, parties would more often forego negotiations for the relative formality of trial. Then, the entire negotiation process collapses upon itself, and the judicial efficiency it fosters is lost.

*Software Tree*, 2010 U.S. Dist. LEXIS 70542, at *7-8 (quoting *Goodyear*, 332 F.3d at 980).

After undertaking an analysis of *ResQNet* and its progeny, the *Software Tree* court came to the conclusion that production of settlement negotiations was not required:

> The Court declines to upset its traditional approach to this issue absent clear precedent compelling a new tack. Continuing to exclude underlying negotiations is consistent with this Court's past decisions in *Soverain* and *Tessera* and is most appropriate given the chilling effect such discovery would have on settlements. While the Court recognizes internal settlement strategy may be protected by

> attorney-client privilege or work product immunity, the possibility of some
> negotiation materials being discovered could hamper negotiation efforts and
> interfere with settlement discussions. Accordingly, continuing to recognize the
> common law settlement privilege is the most prudent course.

*Id.* at *13.

In *Fenner Investments, Ltd. v. Hewlett-Packard Co.*, 2010 U.S. Dist. LEXIS 41514 (E.D.

Tex. Apr. 28, 2010), the court precluded testimony about prior settlement agreements despite

Defendants' reliance on *ResQNet* and the argument that "those agreements are relevant because

they 'will provide the jury with evidence of how [Plaintiff] has actually valued the very patents-

in-suit in negotiations with [Defendants'] competitors.'" 2010 U.S. Dist. LEXIS 41514, at *3.

The *Fenner* court rejected the same justification that AT&T offers in this case reasoning:

> Parties enter into settlements for a number of reasons "other than the value of the
> improvements patented." These reasons include not only cost of additional
> litigation or the relative financial positions of the parties, but also the risk of a
> sizable verdict against a defendants or a finding of invalidity or unenforceability
> against a plaintiff, which would end not only that action but future actions against
> other alleged infringers. Thus, admission of these agreements would "invite a
> 'mini-trial' on similarities and differences in the facts" between this case and the
> settled claims. Such a diversion would cause unfair prejudice, confuse the issues,
> and waste time. Moreover, courts have long held settlement licenses "do not
> accurately reflect what a willing licensee would pay a willing licensor in an arm's
> length negotiation," and have found them to have "little relevance to the
> hypothetical reasonable royalty situation."

*Id.* at *10-11 (internal citations omitted). *See also*, *Advanced Cardiovascular*, 265 F.3d at 1308

(recognizing policy serving to encourage settlements and holding it proper to refuse discovery

into settlement negotiations); *Bergstrom, Inc. v. Glacier Bay, Inc.*, 2010 U.S. Dist. LEXIS 5284,

at *6-8 (N.D. Ill. Jan. 22, 2010) (denying motion to compel settlement negotiations despite claim

that such documents may be relevant to damages or a reasonably royalty calculation because

there is a strong public policy regarding confidentiality of settlement negotiations).

That should be the case here, particularly since there is no clear direction from the

Federal Circuit requiring the elimination of these important recognized policy concerns.

**B.      Not Only Are The Inapposite Agreements Irrelevant To A Reasonable Royalty Analysis, But So Too Is The Underlying Information Predating Their Execution**

MSTG understands that the issue of admissibility is premature at this stage.  Nonetheless, AT&T has unequivocally stated that it intends to use the pre-settlement negotiation documents to limit the scope of MSTG's expert's opinion evidence.  Moreover, AT&T stated in open court on its motion for reconsideration that they intend to show AT&T's expert, Mr. Reed, the underlying documentation leading up to the settlement agreements so that he can adjust (i.e., lower) his conclusions and opinions based on the underlying documents.  In other words, allowing discovery on settlement negotiations and settlements will surely trigger additional evidentiary and admissibility disputes that, in turn, are likely to require additional discovery of third parties, their counsel and others that are "related" to any statement made in settlement negotiations. Federal Rule of Evidence 408 bars the use of settlements to prove the amount of a disputed claim and Federal Rules of Evidence 402 and 403 bar the use of settlements due to their irrelevance to the calculation of damages, their misleading effect on the jury and unfair prejudice.  Thus, other courts have found that Rule 408 not only bars settlement agreements and offers to settle, but also evidence pertaining to such agreements.  *See PharmaStem Therapeutics, Inc. v. Viacell Inc.*, 2003 U.S. Dist. LEXIS 27869 (D. Del. Oct. 7, 2003) (rev'd on other grounds); *Inline Connection Corp. v. AOL Time Warner, Inc.*, 470 F. Supp. 2d 435, 444 (D. Del. 2007) (recognizing that "[w]hile general information about the existence of prior agreements or negotiations may be allowed under FRE 408, the specific terms of such agreements or proposals are not.").  A license agreement should be excluded "where it (1) was reached under a threat of litigation, (2) arose in a situation where litigation was threatened or probable, or (3) was negotiated against a backdrop of continuing litigation infringement."  *PharmaStem*, 2003 U.S. Dist. LEXIS 27869, at *7.

- 13 -

Unlike the circumstances of a hypothetical negotiation at the time AT&T's accused acts of infringement began (as required for the determination of a reasonable royalty in a patent case) MSTG's settlements were reached many years later without any of the settling parties acknowledging or assuming infringement or validity of the patents-in-suit. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009) (stating that a hypothetical negotiation "assumes that the asserted patent claims are valid and infringed."); *cf. ResQNet*, 594 F.3d at 872 (acknowledging "that the hypothetical reasonable royalty calculation occurs before litigation and that litigation itself can skew the results of the hypothetical negotiation."); *St. Clair Intellectual Prop. Consultants, Inc. v. Fuji Film Co.*, 674 F. Supp. 2d 555, 559 n.4 (D. Del. 2009)[2] (recognizing "that royalties paid to avoid litigation are not a reliable indicator or the value of a patent, and should therefore be disregarded when determining reasonable royalty rates. This is because royalties paid under threat of suit may reflect the licensee's desire to avoid the risk and expense of litigation."). In short, MSTG respectfully submits that the settlement agreements here fall squarely under Rules 402, 403 and 408 and their probative value, if any, is minimal. The pre-settlement negotiations and discussions, which AT&T is seeking, have even less probative value. Therefore, without controlling authority to the contrary, MSTG submits that it would be highly inappropriate to depart from the well-established precedent of this and other courts, including the Federal Circuit, and subject pre-settlement negotiations and discussions to intrusive discovery.

---

[2] The Federal Circuit's recent opinion in *St. Clair Intellectual Prop. Consultants, Inc. v. Canon, Inc.*, 2011 U.S. App. LEXIS 515 (Fed. Cir. Jan.10, 2011) found that, based on the correct claim construction, the district court should have granted judgment as a matter of law of non-infringement. The Federal Circuit did not address any issues concerning damages. 2011 U.S. App. LEXIS 515, at *21.

## V.    CONCLUSION

For the reasons set forth above, MSTG respectfully requests that its objections be sustained and the Reconsideration Order dated March 8, 2011 be set aside.

Respectfully submitted,

/s/Dina M. Hayes
Raymond P. Niro (rniro@nshn.com)
Christopher J. Lee (clee@nshn.com)
Dina M. Hayes (hayes@nshn.com)
David J. Mahalek (mahalek@nshn.com)
Robert A. Conley (rconley@nshn.com)
Joseph A. Culig (culig@nshn.com)
NIRO, HALLER & NIRO
181 W. Madison, Suite 4600
Chicago, IL 60602
(312) 236-0733
Fax: (312) 236-3137

Attorneys for MSTG, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 22, 2011, the foregoing

**MSTG, INC.'S FED. R. CIV.P. 72 MEMORANDUM IN SUPPORT OF ITS MOTION TO SET ASIDE MAGISTRATE JUDGE MARTIN ASHMAN'S ORDER DATED MARCH 8, 2011 ON THE PRODUCTION OF SETTLEMENT NEGOTIATIONS**

was filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following counsel of record.  I certify that all parties in this case are represented by counsel who are CM/ECF participants.

David T. Pritikin (dpritikin@sidley.com)
Douglas I. Lewis (dilewis@sidley.com)
Nabeel U. Khan (nkhan@sidley.com)
Lisa A. Schneider (lschneider @sidley.com)
Benedict F. Frey (bfrey@sidley.com)
Sidley Austin LLP
One South Dearborn Street
Chicago, IL  60603
Telephone:  312-853-7000
Fax:  312-853-7036

James F. Figliulo (jfigliulo@fslegal.com)
Stephanie D. Jones (sjones@fslegal.com)
Figliulo & Silverman, P.C.
10 South LaSalle Street
Suite 3600
Chicago, IL  60603
Telephone:  312-251-5281
Facsimile:  312-251-4610

*Attorneys for AT&T Mobility, LLC*

*Attorneys for AT&T Mobility, LLC*

I certify that all parties in this case are represented by counsel who are CM/ECF participants.

/s/Dina M. Hayes
Attorneys for MSTG, Inc.
NIRO, HALLER & NIRO